## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| ELIZABETH HIRSHOM, | ) |
| Plaintiff | ) ) ) |
| v. | ) ) |
| YORK HOSPITAL, its employees and agents, and YORK COUNTY UROLOGY, its employees and agents | ) ) ) ) ) |
| Defendants | ) ) |

CIVIL ACTION NO.

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff by and through her attorneys, Terry Garmey & Associates, and complains against the Defendants as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, Elizabeth Hirshom, (hereinafter referred to as "Bettie"), at all times relevant to this lawsuit was a resident of the State of Florida, County of Lee, City of Bonita Springs.

2. Defendant York Hospital is an entity licensed to provide medical services to the public and at all times relevant to this lawsuit was a Maine corporation with a principal place of business in the Town of York, County of York and State of Maine.

3. Defendant York County Urology, LLC, is an entity licensed to provide medical services to the public and at all times relevant to this lawsuit was a Maine limited liability company registered to do business in the State of Maine with a principal place of business in the City of Biddeford, County of York and State of Maine.

4. Pursuant to 24 MRSA § 2853, *et. seq.* ("The Maine Health Security Act"), Plaintiff timely filed her Notice of Claim and all Defendants were properly served a copy of the notice.

5. On or about August 15, 2016 after the conclusion of the required preliminary pretrial screening panel hearing chaired by Marilyn Ashcroft, Esq., Plaintiff received a copy the panel's unanimous findings in her favor against Defendant York Hospital and its employee or agent Terrance Farrell, DO, and unanimous findings in favor of York County Urology, LLC and its employee or agent Cyrus Noble, MD.

6. Jurisdiction is proper because the parties reside in different states and the amount in controversy exceeds $75,000. See 28 U.S.C. §1332.

7. Venue is proper in the Southern District of Maine pursuant to 28 U.S.C. § 1402(b) because the Defendants' principal places of business are in York County and the medical malpractice complained of occurred in the Town of York.  Pursuant to Local Rule 3(b), this action has been properly filed in Portland because the events giving rise to this claim occurred in York County.

## FACTS RELATED TO ALL COUNTS

8. On Monday, August 19, 2013, Bettie, a retired nurse, sat down to dinner with two friends, Karen Fraser and Joanne McGraw, at a restaurant in Cape Porpoise, Maine.

9. Bettie suddenly began to experience severe pain in her lower right side.  The pain increased to the point where the group of friends abandoned their meals and took Bettie to York Hospital's Emergency Department.

10. The Emergency Department was very busy and Bettie waited a long time to be seen by medical staff.

11. Karen and Joanne called Bettie's life partner, James Nickerson ("Jim") and told him that Bettie did not look good and they thought she would be admitted.

12. Later, a nurse told them that Bettie had a kidney stone which should pass with enough fluids and she would not be admitted because the hospital was so full.

13. Bettie's friends called Jim again and reported that there were no plans to admit Bettie. Jim left his home in Natick, Massachusetts and made the trip north, arriving about 11:00 p.m. at the hospital to relieve Joanne and Karen and take Bettie home from the hospital.

14. Jim briefly spoke to Joanne and Karen and then found Bettie, who appeared to be in severe pain and unable to appreciate what was going on.

15. Jim learned that Bettie had a blockage caused by a kidney stone and that the plan was to give her medicine.

16. The attending emergency room physician and York Hospital employee, Dr. Farrell, diagnosed Bettie with a "right ureterolithiasis[1] with renal colic[2] and acute urinary tract infection."

17. The CT report from the York Hospital Radiology Department documents that Bettie had a totally obstructed ureter and moderate hydroureteronephrosis.

18. In addition to the kidney stone and blockage, Bettie's lab tests showed she had a urinary tract infection that may be spreading beyond the bladder.

19. The only precautions Dr. Farrell took to guard against the risks associated with Bettie's infected urine and obstructed kidney were to call the urologist on call and give her antibiotics.

20. Dr. Farrell's note says he contacted the on-call urologist, Dr. Cyrus Noble; they

---

[1] *Urolithiasis* is the formation of urinary calculi (urinary stones), which are calculi formed or located anywhere in the urinary system.

discussed the test findings and agreed on a treatment plan.

21. Dr. Noble has no records or recollection of the consultation.

22. Dr. Farrell saw Bettie, who was still heavily medicated with Morphine, for about 1 minute before he discharged her around 12:20 am on August 20, 2013 with a prescription for a 7-day supply of antibiotics, pain medications and a device to catch kidney stones with further instructions to drink lots of fluids.

23. The instructions also state that she should return to the hospital or follow up with a urologist within 48 hours if her condition changed for the worse or failed to improve.

24. A nurse handed Jim discharge papers and he helped Bettie to the car because she was too weak to walk on her own.

25. On the way to the car Bettie and Jim saw Dr. Farrell and Jim felt compelled to ask him, "are you sure she is going to be okay?" The doctor reiterated his discharge advice - give her the medication and if things do not improve in 48 hours to return to the hospital.

26. The next morning Jim went to CVS, filled the prescriptions and gave the medicine to Bettie as directed.

27. Bettie did not get out of bed, except to attempt to go to the bathroom, for the entire day. Her condition appeared to stay the same as it had been when the couple left York Hospital.

28. The next morning at approximately 5:30 a.m. Bettie's condition worsened.

29. Jim attempted to help her from the bed to the bathroom when she fell and lost control of her bowels. Jim immediately called 911 and Ogunquit Rescue was dispatched to the residence at 5:36 a.m. where they found Bettie propped up against the bed and disoriented.

30. Bettie's blood pressure was extremely low at 88/31, she was evaluated for sepsis and transported by ambulance to York Hospital.

---

[2] *Renal colic* is a type of abdominal pain commonly caused by kidney stones.

31. By the time Bettie returned to York Hospital, she was unresponsive secondary to septic shock, heart failure and respiratory distress.

32. After an emergency intubation, Bettie was admitted to the Intensive Care Unit in critical condition. She was given pressors to reverse her dangerously low blood pressure and required intravenous fluid resuscitation.

33. The doctors who reviewed the films and labs from Bettie's prior admission appreciated that she had "urosepsis[3] and a 4 mm right distal ureteral stone at the ureterovesical junction[4] with hydronephrosis[5]" and required an immediate stent placement to relieve the pressure and infection in her kidney.

34. Bettie suffered catastrophic and permanent complications from the delay in treatment. She was so sick that she was transferred to the Brigham & Women's Hospital by a Life Flight Helicopter on August 22, 2016.

35. Bettie spent approximately two weeks at Brigham. She was eventually weaned from the ventilator after 7 days, but developed ventilator-related pneumonia. For much of the stay she was delirious. She also developed dry gangrene necrosis of her fingers and toes secondary to the extraordinary amount of pressors given to her in order to maintain her blood pressure.

36. She was discharged from Brigham's to Northeast Rehabilitation Hospital where she remained for most of the month of September.

37. Bettie would go on to have partial amputations of at least 5 of her fingers and

---

[3] *Urosepsis* is the acute condition of a systemic infection in the blood that develops secondary to a urinary tract infection (UTI), and then circulates throughout the entire body. A lay term for this critical condition is blood poisoning because an infection is in the bloodstream.
[4] *Ureterovesical junction* (*UVJ*) obstruction refers to a blockage to this area. The obstruction impedes the flow of urine down to the bladder, causing the urine to back up into and dilate the ureters and kidney
[5] *Hydronephrosis* is the swelling of a kidney due to a build-up of urine. It happens when urine cannot drain out from the kidney to the bladder from a blockage or obstruction

several toes.

38. Before the injuries she suffered from the infection, Bettie was a voracious reader. Concentration deficits now limit the activity she so much enjoyed. She also suffers from painful neuropathy from the damages caused by the infection.

39. The medical costs necessarily incurred to save Betty's life and otherwise mitigate the impacts of Defendants' negligence to date are in excess of approximately $300,000.00.

## COUNT I
## (NEGLIGENCE)

40. Plaintiff repeats and realleges the above allegations in paragraphs 1 through 40 as if set forth herein in full.

41. Defendant's, their agents and/or employees, individually and/or collectively as the treatment team, jointly and severally owed a duty to provide Plaintiff with the ordinary degree of medical knowledge, skill, judgment and care that fell within all of the applicable standards of care.

42. The basic standards of care applicable to this case include but are not limited to: the requirement for admission, hospitalization and surgical intervention of a patient like the Plaintiff who presents to the emergency department with an obstructing kidney stone and a urinary tract infection; duties to keep accurate records, communicate accurately with other care providers and advocate for patients in a situation where a physician believes the patient should be admitted to the hospital; and the duty to provide patients like the Plaintiff with clear and accurate discharge instructions, especially when they are discharged under the influence of medications.

43. Defendants, their agents and/or employees, jointly and severally breached their duties to provide standard medical care to Plaintiff.

44.     As a direct and proximate result of the negligence of the Defendants Plaintiff suffered severe and permanent injuries, including but not limited to urosepsis, septic shock, multi-organ failure, acidosis, severe hypotension and related complications.

45.     As a direct and proximate result of the carelessness and negligence of the Defendants Plaintiff has suffered and will continue to suffer from physical and emotional pain, disfigurement, loss of enjoyment of life, past and future medical expenses, lost earning capacity and permanent impairment.

WHEREFORE, the Plaintiff, Bettie Hirshom, requests Judgment in her favor against Defendants, their agents and/or employees, on each and every claim and Count in an amount sufficient to reasonably compensate her for all pecuniary and non-pecuniary damages including but not limited to: physical and mental injuries, lost earning capacity, permanent impairments, loss of enjoyment of life, past, present and future medical costs, and all other damages allowed by law, together with costs and interest.

## DEMAND FOR JURY TRIAL

Plaintiff Elizabeth Hirshom hereby demands a trial by jury on all issues in this Complaint.

Dated at Portland, Maine this 8th day of September, 2016.

Respectfully submitted,

/s/ Terrence D. Garmey
Terrence D. Garmey, Esq. Bar #1656
*Attorney for Elizabeth Hirshom*
Terry Garmey and Associates
482 Congress Street, Suite 402
Portland, ME  04101
207-899-4644
tgarmey@garmeylaw.com

7